1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD WAYNE PARKER,

11          Plaintiff,                    No. CIV S-10-0065 KJM EFB PS

12      vs.

13   UNITED STATES DEPARTMENT
     OF JUSTICE, at al.,
14
            Defendants.              FINDINGS AND RECOMMENDATIONS
15
     _____/
16

17          This action, in which plaintiff is proceeding pro se and in forma pauperis, is before the

18   undersigned pursuant to Eastern District of California Local Rule 302(c)(21) and 28 U.S.C.

19   § 636(b)(1).  The United States Department of Justice ("DOJ") moves (1) to dismiss defendants

20   the Office of Information Policy ("OIP"), the Federal Bureau of Investigation ("FBI"), and the

21   Drug Enforcement Administration ("DEA") as improper defendants pursuant to Federal Rule of

22   Civil Procedure ("Rule") 12(b)(1); (2) to dismiss any claims for DEA Laboratory records for

23   failure to exhaust administrative remedies; and (3) for summary judgment pursuant to Rule 56.

24   Def.'s Mot. for Summ. J. ("MSJ"), Dckt. No. 31.  Plaintiff opposes the motion and moves to

25   strike portions of the motion and supporting papers.  Pl.'s Opp'n to MSJ ("Opp'n"), Dckt. No.

26   37.  For the reasons stated below, the motions to dismiss and for summary judgment must be

granted and plaintiff's motion to strike should be denied as moot.

I.    Background

In January 2010, plaintiff filed a complaint under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the DOJ, OIP, FBI, and DEA.  Compl., Dckt. No. 1.  He seeks the release of certain lab testing results that he requested from the FBI and the DEA.  *Id.*  It is undisputed that the FBI has found and processed a total of 41 pages of FBI records responsive to plaintiff's request dated April 16, 2007, and has received and processed 279 pages of referred DEA records.  Def.'s Stmt. of Undisp. Facts, Dckt. No. 31-1 ("SUF"), ¶ 1; Pl.'s Am. Resp. to SUF ("Am. RSUF"), Dckt. No. 37, ¶ 1.  However, plaintiff contends that not all documents have been produced and that there are documents that are "glaringly missing" from the production. Opp'n at 3.

A.    Facts Relating to Request for FBI Records[1]

The FBI began its investigation into the activities of plaintiff as a result of his July 2, 1998 arrest following a controlled purchase of cocaine, for which plaintiff was indicted on July 16, 1998.  SUF ¶ 2[2]; Am. RSUF ¶ 2.[3]  Plaintiff was subsequently convicted of conspiracy to possess with intent to distribute cocaine and in January 2000 was sentenced to life in prison. SUF ¶ 4; Am. RSUF ¶ 4.

1.    Correspondence on the Request to the FBI

On April 16, 2007, plaintiff sent via letter addressed to FBI headquarters a FOIA/Privacy Act request for "copies of all testing results/written finding [sic] from the tests performed on

---

[1] Significant portions of this statement of facts are taken directly from defendant's statement of undisputed facts.  However, except where otherwise indicated, plaintiff has indicated that the facts are undisputed.

[2] All citations to the Statement of Undisputed Facts herein incorporate by reference those citations stated in the SUF in support of each undisputed fact.

[3] The DOJ objects to plaintiff's submission of a revised response to the statement of undisputed facts, arguing that plaintiff improperly amended the substance of those responses. *See* Dckt. No. 38 at 4.  That objection is overruled.

2

cocaine kilos submitted to the DEA Southwest Lab on April 1, 1999 by SA FRANK JESTER on a DEA Form 7." SUF ¶ 5; Am. RSUF ¶ 5. After three status reports, by letter dated March 28, 2008, the FBI released 30 pages to plaintiff from file 245-LA-215211, indicated that it had withheld information under FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(E), and advised plaintiff of his right to file an administrative appeal to OIP. SUF ¶ 6; Am. RSUF ¶ 6. On May 2, 2008, plaintiff appealed the FBI's March 28, 2008 action to OIP, claiming that "the FBI response provided 30 pages of miscellaneous documents which [he] did not ask for." SUF ¶ 7; Am. RSUF ¶ 7. On July 22, 2009, OIP affirmed the FBI's withholding of information in the 30 pages received by plaintiff, under the Privacy Act and certain FOIA exemptions and advised plaintiff of his right to seek judicial review, which plaintiff did on January 8, 2010 when he filed this action. SUF ¶¶ 8, 9; Am. RSUF ¶¶ 8, 9.

On January 5, 2011, the FBI released four pages that were responsive to plaintiff's April 16, 2007 request, and that were located during a hand search of file 245-LA-215211. SUF ¶ 10; Am. RSUF ¶ 10. The FBI advised plaintiff that it had reviewed 11 pages of material and that four pages were not included in the release because they were duplicative of DEA documents plaintiff had already received and another three pages were referred to the DEA for direct response to plaintiff. *Id.* The FBI also advised plaintiff of his right to appeal the denials in the release to OIP. *Id.*

2.    First Referral from DEA

On September 10, 2010, the DEA referred approximately 242 pages of documents to the FBI for direct response to plaintiff, and on September 15, 2010, the FBI sent all 242 of those pages to plaintiff. SUF ¶ 11; Am. RSUF ¶ 11. The FBI informed plaintiff that it had withheld information under Exemption (j)(2) of the Privacy Act and FOIA Exemptions (b)(6) and (b)(7)(c), and that the DEA had withheld information under FOIA Exemptions (b)(2), (b)(7)(C), and (b)(7)(F). *Id.* The FBI also advised plaintiff of his right to appeal to OIP any withholdings in the release. *Id.*

3

3.     Second Referral from DEA

On November 16, 2010, the DEA referred several additional documents consisting of approximately 37 pages to the FBI for direct response to plaintiff, and the FBI released those pages to plaintiff on December 21, 2010.  SUF ¶ 12; Am. RSUF ¶ 12.  The FBI stated that it had withheld information under Exemption (j)(2) of the Privacy Act and FOIA Exemptions (b)(6) and (b)(7)(c), and that the DEA had withheld information under FOIA Exemptions (b)(7)(C) and (b)(7)(F).  *Id.*  The FBI also advised plaintiff of his right to appeal any withholdings in the release.  *Id.*

4.     The FBI's Central Records System

The Central Records System ("CRS") enables the FBI to maintain information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  SUF ¶ 13; Am. RSUF ¶ 13.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel and other files compiled for law enforcement purposes.  *Id.*  This system consists of a numerical sequence of files, called FBI "classifications," which are broken down according to subject matter.  *Id.*  The subject matter of a file may relate to an individual, organization, company, publication, activity or foreign intelligence matter (or program).  *Id.*  Certain records in the CRS are maintained at FBI headquarters, whereas records that are pertinent to specific field offices of the FBI are maintained in those field offices.  *Id.* Although the CRS is primarily designed to serve as an investigative tool, the FBI searches the CRS for documents that are potentially responsive to FOIA/Privacy Act requests.  *Id.*  The mechanism that the FBI uses to search the CRS is the Automated Case Support System ("ACS").  *Id.*

On or about October 16, 1995, the ACS system was implemented for all Field Offices, Legal Attaches ("Legats"), and FBI headquarters, to consolidate portions of the CRS that were previously automated.  SUF ¶ 14; Am. RSUF ¶ 14.  ACS can be described as an internal computerized subsystem of the CRS.  *Id.*  Because the CRS cannot electronically query the case files for data, such as an individual's name or social security number, the required information is

4

duplicated and moved to the ACS so that it can be searched.  *Id.*  Over 105 million records from the CRS were converted from automated systems previously utilized by the FBI.  *Id.*  Automation did not change the CRS; instead, automation has facilitated more economic and expeditious access to records maintained in the CRS.  *Id.*

The retrieval of data from the CRS is made possible through the ACS using the General Indices, which are arranged in alphabetical order.  SUF ¶ 15; Am. RSUF ¶ 15.  The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.  *Id.*  The entries in the General Indices fall into two categories:

> (a) A "main" entry -- A "main" entry, or "main" file, carries the name corresponding with a subject of a file contained in the CRS.

> (b) A "reference" entry -- A "reference" entry, sometimes called "cross-references," generally is a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another "main" file on a different subject matter.

*Id.*  To locate records concerning a particular subject, such as Richard Parker, one can use the name as a search term in a query to the General Indices.  *Id.*  A "serial" is defined as a document within a file, numbered consecutively at the bottom of the page by a serial number.  SUF ¶ 16; Am. RSUF ¶ 16.  A serial number is added to the end of a file number to arrange the documents in sequential order.  *Id.*

The ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

> (a) Investigative Case Management ("ICM") – ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.  The Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case.  The field offices that receive leads from the OO are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices.  When a case is opened, it is assigned a Universal Case File Number ("UCFN"), which is used by all FBI headquarters, as well as all FBI field offices and Legats that are conducting or assisting in the investigation.  Using the file number "157-SF-12345" as an example, an explanation of the UCFN is as follows: "157" indicates the classification for the specific type of investigation, in this case "Civil Unrest (Disorders and Demonstrators)"; "SF" is the abbreviated form used for the OO of the investigation, in this case San Francisco Field Office; and "12345"

denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept in that only the creator of a document serializes it into a file. This provides a singlesource entry of serials into the computerized ECF system. All original serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 110.7 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

SUF ¶ 18; Am. RSUF ¶ 18.

The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. SUF ¶ 19; Am. RSUF ¶ 19. The FBI Special Agent ("SA") – and on occasion, support employees – assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBI headquarters, may, in their discretion, decide to index names other than subjects, suspects, and victims. *Id.*

Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. SUF ¶ 20; Am. RSUF ¶ 20. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal and national security statutes. *Id.*

The General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter or individual, such as Richard Parker. SUF ¶ 21; Am. RSUF ¶ 21.

////

////

5.     <u>The FBI's Search for Responsive Records</u>

In response to plaintiff's FOIA/Privacy Act request, the FBI conducted a search of the CRS to identify all potentially responsive files indexed to Richard Wayne Parker.  SUF ¶ 22; Am. RSUF ¶ 22.  The FBI conducted a search using a six-way breakdown of "Richard Wayne Parker," including such variations as "Parker, Richard," "Parker, Richard Wayne," and "Wayne Richard Parker."  *Id.*  As a result of this search, the FBI identified one main file, 245-LA-215211, as potentially responsive.  *Id.*

This main file was originally opened as 281-LA-215211.  SUF ¶ 23; Am. RSUF ¶ 23.  As the investigation continued, the classification of the file changed from 281 ("Criminal Enterprises") to 245 ("Organized Crime Drug Enforcement Task Force").  *Id.*

The FBI's current policy is to search for and identify only "main" files responsive to FOIA/Privacy Act requests at the initial administrative stage.  SUF ¶ 24; Am. RSUF ¶ 24.  On this request, however, the FBI contends that it conducted a search of the CRS to locate cross-references potentially responsive to plaintiff's request, using the same search terms described above, but did not locate any cross-references responsive to plaintiff's request.  SUF ¶ 24.  Plaintiff disputes this as to cross-referencing, and contends instead that the documents at issue cross-referenced both case numbers.  Am. RSUF ¶ 24; Opp'n at 7.

In an abundance of caution, the FBI took an additional step and conducted a "hand search" of the main file listed above to attempt to locate any lab reports related to plaintiff.  SUF ¶ 25; Am. RSUF ¶ 25.  The FBI located responsive records as a result of this hand search, and these were processed and released to plaintiff on January 5, 2011.  *Id.*

6.     <u>FBI Conclusion</u>

The FBI contends that it has processed and released all reasonably segregable information from the approximately 41 pages of FBI documents and 279 pages referred from the DEA responsive to plaintiff's requests, that it has properly withheld information under certain Privacy Act and FOIA Exemptions, and that it has released all reasonably segregable,

7

non-exempt information to plaintiff in response to plaintiff's FOIA/Privacy Act requests.  SUF

¶ 47.  Plaintiff disputes this and contends that certain material documents still have not been

released.  Am. RSUF ¶ 47; Opp'n at 3, 5, 6.

        B.      Facts Relating to Request for DEA Records

            1.      Summary of Correspondence and Administrative Action on Plaintiff's
                    Request for DEA Laboratory Records under FBI Investigative File
                    Number 281-LA-215211

On January 13, 2006, plaintiff sent a letter to the DEA, DOJ, FOIA/PA

Coordinator-Operations Unit in Washington D.C. and the DEA Southwest Laboratory in Vista,

California, requesting documents related to the testing of samples at the DEA Southwest

Laboratory, for which he provided laboratory numbers and the dates the materials were tested.

SUF ¶ 48; Am. RSUF ¶ 48.  Also on January 13, 2006, plaintiff sent a letter to the DEA, DOJ,

FOIA/PA Coordinator-Operations Unit in Washington D.C. and the DOJ/DEA Administration,

Special Testing and Research Laboratory in McLean, Virginia, requesting documents related to

the testing of samples at the DEA Special Testing and Research Laboratory, for which he

provided FBI Case File No. 281 LA 215211, laboratory numbers and other miscellaneous

information.  SUF ¶ 49; Am. RSUF ¶ 49.

On March 8, 2006, DEA acknowledged receipt of plaintiff's requests and informed him

that his requests had been assigned a DEA FOIA Request number 06-0502-P.  SUF ¶ 50; Am.

RSUF ¶ 50.  The letter informed plaintiff that he failed to reasonably describe the records sought,

and that the file was administratively closed.  *Id.*  The letter also stated plaintiff's administrative

appeal rights.  *Id.*

By letter dated May 1, 2006, which was received by DEA on May 23, 2006, plaintiff,

"rather than appeal" the determinations in DEA FOIA Request No. 06-0502-P, provided a

criminal case name and number, the name of the Southwest Laboratory, and an FBI case file

number (281-LA-215211), and requested all documents describing tests conducted and test

results on any cocaine samples submitted to DEA by the FBI or the United States Attorney's

Office.  SUF ¶ 51; Am. RSUF ¶ 51.  According to defendant, plaintiff's letters of January 13, 2006, and May 1, 2006, were then considered as a single FOIA request.  SUF ¶ 51.  Plaintiff disputes the "representation of combination of original request and resubmission in a proper format."  Am. RSUF ¶ 51; Opp'n at 7-8.  Instead, plaintiff contends that when DEA closed the file, he resubmitted a *new* request in a proper format (and that therefore it would have been futile to appeal the old, improperly formatted request).  *Id.*

On June 2, 2006, DEA acknowledged receipt of plaintiff's May 1, 2006 letter.  It also informed plaintiff that the information he was seeking pertained to an investigation conducted by the FBI and that the DEA did not index its laboratory files using FBI investigative file numbers.  Accordingly, the June 2 letter informed plaintiff that he should contact the FBI.  SUF ¶ 52; Am. RSUF ¶ 52.  According to defendant, this June 2 letter again informed plaintiff of his administrative appeal rights and there is no record of administrative appeal.  SUF ¶ 53.  Plaintiff disputes that an appeal was needed based on the "referral" to the FBI, and contends that he accepted the referral and made further inquiries to the FBI and OIP.  Am.  RSUF ¶ 53.

On September 1, 2010, DEA referred parts of 211 pages and 31 entire pages, numbered DEA-001 through 242 and, for reference, copies of the January 13, 2006 and May 1, 2006 FOIA requests, to the FBI for direct response to plaintiff.  SUF ¶ 54; Am. RSUF ¶ 54.  Then, on November 16, 2010 and December 6, 2010, DEA referred portions of 37 pages numbered DEA-243 through 279 to the FBI for direct response to plaintiff.  SUF ¶ 55; Am. RSUF ¶ 55.

   2.  <u>Litigation Review and Remedial Actions: DEA Chief Counsel Initiates<br>Search for Records under FBI File Number 281-LA-21521</u>

After service of the complaint, William C. Little, Jr., an attorney employed by the DEA Office of Chief Counsel who is responsible for any FOIA and Privacy Act matters in which DEA is an interested party, personally conducted a litigation review.  SUF ¶ 56; Am. RSUF ¶ 56.  Mr. Little concluded that the correspondence maintained in the SARF file associated with the processing of plaintiff's request provided sufficient information to identify records in the

possession of DEA.  *Id.*  Based on Mr. Little's knowledge of DEA record systems, sufficient information was provided in plaintiff's letters of January 13, 2006 and May 1, 2006 to retrieve DEA laboratory records associated with the testing of samples submitted by the FBI under FBI Case File No. 281-LA-215211.  SUF ¶ 57; Am. RSUF ¶ 57.

Mr. Little was personally involved in contacting both the Southwest Laboratory and the Special Testing Laboratory and requesting the search for and retrieval of all records and materials associated with the testing of materials identified with FBI Case File No. 281-LA-215211.  SUF ¶ 58; Am. RSUF ¶ 58.  A total of 242 pages were provided by the Southwest Laboratory and the Special Testing Laboratory, and Mr. Little personally processed the pages received from both Laboratories.  SUF ¶ 59; Am. RSUF ¶ 59.  Since the pages related to an investigation by the FBI, the materials were referred there for review and a final release determination.  *Id.*

3.   DEA Chief Counsel Initiates Search for Records under FBI File Number 245-LA-215211, Not Requested under FOIA

On or about October 27, 2010, Mr. Little received notice from the FBI that the original FBI case file number had changed and that FBI Case File No. 245F-LA-215211 also related to the plaintiff.  SUF ¶ 60; Am. RSUF ¶ 60.  Mr. Little personally contacted the DEA Southwest Laboratory and the Special Testing Laboratory, providing them this FBI Case File Number (245F-LA-215211) and requested a search for and retrieval of all records and materials associated with the testing of materials identified with FBI Case File No. 245-LA-215211.  SUF ¶ 61; Am. RSUF ¶ 61.

The Southwest Laboratory identified and provided 37 pages that Mr. Little personally processed.  SUF ¶ 62; Am. RSUF ¶ 62.  Since the pages related to an investigation by the FBI, the materials were referred to the FBI for review and a final release determination.  *Id.*  Mr. Little was notified personally that no records related to FBI Case File No. 245F-LA-215211 were located at the DEA Special Testing Laboratory.  SUF ¶ 63; Am. RSUF ¶ 63.

10

4.      Further Facts on Adequacy of Search

Based upon plaintiff's request, the records described were laboratory records.  SUF ¶ 64; Am. RSUF ¶ 64.  All DEA laboratory records are reasonably likely to be found in DEA Functional File System File No. 901, Laboratory Case Files, and each DEA laboratory maintains a separate file system.  *Id.*  No other record system maintained by DEA was reasonably likely to contain information responsive to plaintiff's request.  SUF ¶ 65; Am. RSUF ¶ 65.

These case files generally include documents, in paper form, related to the analysis of drug and non-drug evidence, including evidence accountability and disposition records, chemist worksheets, ballistics reports, and related analytical documents.  SUF ¶ 66; Am. RSUF ¶ 66. Laboratory records cannot reasonably be identified or retrieved except by knowing the laboratory that conducted the testing, the agency case file number and the exhibit or Lab No.  *Id.* Laboratory files are maintained at each Laboratory that performs forensic testing and are maintained based upon the agency case file number, which is the number contained on the DEA 7, Block 2a, when the substance(s) are sent to the lab for testing.  *Id.*  Each item sent has an exhibit number, which is assigned by the agency forwarding the item for testing.  *Id.*

The "Lab No." is a 6 digit number assigned at the particular laboratory and added to the DEA 7 associated with the exhibit for the purpose of laboratory tracking and reference.  SUF ¶ 68; Am. RSUF ¶ 68.  These numbers are not unique to any particular Laboratory, and each Laboratory, once it reaches the maximum number allowed, will reset the numbering to zero.  *Id.* Thus, to retrieve documents associated with the testing of any item, the laboratory that performed the test, the agency file number and the exhibit or Lab No. must be known to retrieve information associated with any particular item sent to a DEA laboratory for testing.  *Id.* Plaintiff does not dispute this fact but adds that "once a lab, agency case file number and any laboratory number is located, that would permit using that located document to gleen other identifiers from the form."  Am. RSUF ¶ 68.

////

With regard to each FBI case file number, it was not certain that the numbers provided by plaintiff were exhibit numbers; further, the numbers did not correspond with the 6-digit laboratory number assigned at DEA laboratories.  Therefore, DEA requested its laboratories to provide all records.  SUF ¶ 69; Am. RSUF ¶ 69.  Little explains in his declaration that obtaining all records associated with the FBI file numbers seemed prudent and an efficient manner in which to proceed and, once received, allowed for a further review to identify the responsive information.  *Id.*; Little Declaration at ¶ 69.  All the material appeared to be responsive and was forwarded to the FBI for a final release determination.  *Id.*

Of the 279 pages received and processed, there was no DEA recommendation that any page be withheld in its entirety.  SUF ¶ 70; Am. RSUF ¶ 70.  Internal telephone numbers and the names and initials of DEA support personnel were withheld on pages pursuant to FOIA Exemptions (b)(2), (b)(7)(C) and (b)(7)(F).  *Id.*

### 5.   Description of Responsive Material

During the underlying criminal investigation the specimens were forwarded to DEA by the FBI for forensic testing.  SUF ¶ 71; Am. RSUF ¶ 71.  Thus, the responsive materials provided by the DEA laboratories included the DEA Report of Drug Property Collected, Purchased or Seized, DEA Form 7, the DEA Evidence Accountability Record, DEA Form 307, the DEA Forensic Chemist Worksheet, DEA Form 86, the DEA Receipt for Cash or Other Items, DEA Form 12, letters written to FBI from DEA, letters written to DEA from FBI, laboratory graphs, ChemCon Results, Data File Printout, ACQmethod Graphs, Additional Compounds Found, and Calibration Tables.  SUF ¶ 72; Am. RSUF ¶ 72.  Plaintiff disputes that these documents amounted to all of the responsive documents, and contends that there are documents that are "glaringly missing" from the pages provided.  Am. RSUF ¶ 72; Opp'n at 3-5.

The DEA Form 7, Report of Drug Property Collected, Purchased or Seized, is used by DEA, other Federal, state and local law enforcement agencies when they submit substances to a DEA forensic laboratory for testing.  SUF ¶ 73; Am. RSUF ¶ 73.  The submitting law

enforcement agency was required to complete Blocks 1-2 and 4-18, and the expected contents were: (1) how the drug was obtained, (2a) the submitting agency's file number, (4) where and when the drug was obtained, (5) file title, (6) referring agency information, (7) date prepared, (8) group number, (9) exhibit numbers, (11) alleged drugs, (13) and (14) approximate quantities, (16) the "Remarks," a narrative that may include the names of law enforcement officers and third parties and other information regarding a seizure, (17) submitting agent, (18) approving supervisor. SUF ¶ 74; Am. RSUF ¶ 74. Blocks 3 and 19 through 39 are completed by DEA laboratory personnel, and the expected contents are: (19) number of packages, (20), (21), (23), (24), (34) and (37) names and/or signatures of law enforcement personnel or DEA laboratory employees, (25) results of the laboratory analysis including a description and quantity of the alleged drugs that were tested, (27) lab numbers, (28) active drug ingredient found, (29-33) drug quantity information, (36) laboratory's date completed, (39) laboratory's location. SUF ¶ 75; Am. RSUF ¶ 75.

The DEA Form 86, Forensic Chemist Worksheet, is used to record the description of the evidence item and its packaging, including numerical identification, and to record the information as the items are initially removed from the evidence container. SUF ¶ 76; Am. RSUF ¶ 76. Additionally, this document is used to record actions taken during the analysis of the evidence item. *Id.* These worksheets are used to record all raw data, observations and calculations and should be written to permit adequate reconstruction of the analysis or examination performed. *Id.*

The DEA Form 307, Evidence Accountability Record, is a 5" by 8" index card used to record manually the movement of exhibits also recorded in Laboratory Management Evidence System (LEMS) electronically. SUF ¶ 77; Am. RSUF ¶ 77. The index card consists of blocks asking for the agency, agency case no., lab no., description, received from, date received, received by, storage location, exhibits, suspected drug, assigned to, date assigned, evidence delivery: date, to and from, and disposition. *Id.*

13

The DEA Form 12, Receipt for Cash or Other Items, is a multipurpose document utilized as a receipt by DEA personnel when documenting a variety of non-drug evidence and high value item transactions.  SUF ¶ 78; Am. RSUF ¶ 78.  The document consists of blocks asking for: "to, file no., G-Dep Identifier, file title, date, amount or quantity, description of item, purpose, received by, witnessed by, name and title."  *Id.*

II.     Motion to Dismiss

The defendants move under Rule 12(b)(1) to dismiss the OIP, FBI, and DEA as improper defendants[4] and to dismiss all of plaintiff's claims for DEA records.  MSJ at 4-8.

A party may seek dismissal for lack of jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  In a factual challenge, the court may consider evidence demonstrating or refuting the existence of jurisdiction.  *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).  "In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Id.* (quoting *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987)).

////

////

---

[4] Absent a waiver of immunity there is no subject matter jurisdiction for plaintiff's claims against agencies of the United States.  *See United States. v. Sherwood*, 312 U.S. 584, 586 (1941); *Munoz v. Mabus*, 630 F.3d 856, 861 (9th Cir. 2010).  Here, defendants assert that there is no waiver, and therefore no jurisdiction for plaintiff's claims against these components of the Department of Justice.  "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994) (internal citations omitted).  Rule 12(b)(1) allows a party to seek dismissal of an action where federal subject matter jurisdiction is lacking.  "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir.2001).

1    A.    Motion to Dismiss Defendants OIP, FBI, and DEA

2        Defendants point out that OIP, FBI, and DEA, are departmental components of the U.S.

3  Department of Justice.  As discussed below, they are not "agencies" that can be sued under

4  FOIA.  MSJ at 4-5.

5        As components of an agency of the United States, these DOJ components may only be

6  sued to the extent that the United States has consented to suit, and then only on such terms and

7  conditions placed on any such waiver of sovereign immunity.  *Munoz v. Mabus*, 630 F.3d at 861.

8  FOIA provides a limited waiver of the federal government's immunity for district courts "to

9  enjoin the agency from withholding agency records and to order the production of any agency

10 records improperly withheld from the complainant."  *See* 5 U.S.C. § 552(a)(4)(B).  An "agency"

11 is defined as "any executive department, military department, Government corporation,

12 Government controlled corporation, or other establishment in the executive branch of the

13 Government (including the Executive Office of the President), or any independent regulatory

14 agency."  *Id.* § 552(f).  Here, OIP, FBI, and DEA are departmental components of the DOJ;

15 accordingly, none is an "agency" that can be sued under FOIA.  Rather, the DOJ, which is a

16 cabinet-level Department within the Executive Branch and which is the entity that promulgated

17 and enforces the regulations and procedures that govern the components' decisions, is the

18 pertinent agency within the meaning of 5 U.S.C. § 552(f).  *See* 28 C.F.R. §§ 16.2(b)(4), (b)(6),

19 16.9(a); *see also Hersh & Hersh v. U.S. Dep't of Health & Human Servs.*, 2007 WL 2155695, at

20 *1 (N.D. Cal. July 26, 2007) (dismissing HHS components, leaving HHS as sole defendant);

21 *Sonds v. Huff*, 391 F. Supp. 2d 152, 155 (D.D.C. 2005) (substituting the DOJ as the sole

22 defendant in place of DEA).  Therefore, the defendants OIP, FBI, and DEA must be dismissed

23 from this action, leaving the DOJ as the only proper defendant.

24    B.    Motion to Dismiss Plaintiff's Claims for DEA Records

25        The DOJ  moves to dismiss plaintiff's claims as to it regarding plaintiff's DEA records,

26 arguing that plaintiff failed to exhaust his administrative remedies on those claims.  MSJ at 6.

15

1   The DOJ contends that plaintiff failed to appeal DEA's determination that plaintiff's FOIA

2   request for DEA records was defective, and instead wrote a letter on May 1, 2006 supplementing

3   his earlier request, which DEA received on May 23, 2006.  *Id.* (citing SUF ¶¶ 50, 51).  The DOJ

4   argues that DEA's June 2, 2006 response to that supplemental request was timely under the

5   statutory 20-working-day time limit, and plaintiff did not appeal that response.  *Id.* (citing SUF

6   ¶ 53).  Therefore, according to the DOJ, this court lacks jurisdiction over plaintiff's FOIA claim

7   for DEA records.[5]  *Id.*  Plaintiff opposes the motion to dismiss, arguing that an appeal was not

8   necessary based on the "referral" to the FBI, and contending that he accepted the referral and

9   made further inquiries to the FBI and OIP.  Am. RSUF ¶ 53.

10          "FOIA requires that administrative appeals be exhausted before suit may be brought in

11   federal court."  *Hymen v. Merit Sys. Protection Bd.*, 799 F.2d 1421, 1423 (9th Cir. 1986), *cert.*

12   *denied*, 481 U.S. 1019 (1987) (citations omitted); *Judicial Watch, Inc. v. U.S. Naval*

13   *Observatory*, 160 F. Supp.2d 111, 112 (D.D.C. 2001) ("[F]ull and timely exhaustion of

14   administrative remedies is a prerequisite to judicial review under FOIA.").  If the records

15   requester fails to exhaust administrative remedies, the lawsuit may be dismissed for lack of

16   subject matter jurisdiction.  *United States v. Steele*, 799 F.2d 461, 466 (9th Cir. 1986) ("Where

17   no attempt to comply fully with agency procedures has been made, the courts will assert their

18   lack of jurisdiction under the exhaustion doctrine.").

19          Here, plaintiff effectively concedes that he did not fully exhaust his FOIA claim for DEA

20   records.  His failure to exhaust that claim requires that it be dismissed for lack of subject matter

21   jurisdiction.  Plaintiff 's contention that he did not appeal the March 8, 2006 denial of his

22          [5] The DOJ also argues that this court lacks jurisdiction over the claim for DEA records

23   since plaintiff failed to make a FOIA request to DEA for the records associated with FBI
     investigative file number 245-LA-215211, and instead only requested records relating to FBI file

24   number 281-LA-215211.  MSJ at 7 (citing Little Decl. Exs. A, B and D).  The DOJ further
     contends that plaintiff's failure to request the 245-LA-215211 records under FOIA deprives

25   plaintiff of standing to sue for the records associated with that number.  *Id.*  However, because
     the plaintiff failed to exhaust his administrative remedies with regard to his DEA claims, these

26   issues need not be addressed.

January 13, 2006 DEA request because he submitted a new request on May 1, 2006, missed the point. His failure to appeal the March 8 denial is not the issue before the court. Rather, the issue is his failure to appeal the June 2, 2006 denial of *both* of his DEA requests (which the DEA properly construed as one request). Additionally, although plaintiff appears to be requesting that the court excuse his non-exhaustion by arguing that an appeal was not necessary based on the "referral" to the FBI, and the fact that plaintiff thereafter focused his efforts and attention toward the FBI, as DEA suggested, equitable exceptions and excuses are inapplicable to an absence of subject-matter jurisdiction. *See, e.g., Marley v. United States*, 567 F.3d 1030, 1032 (9th Cir. 2008). Moreover, as defendant notes, when the FBI failed to find what plaintiff was seeking, plaintiff could have asked to reopen his FOIA request to DEA a second time (as he had already done in May 2006), and then, if he was dissatisfied, he could have appealed administratively. However, he never appealed the DEA's denial of his FOIA requests. For these reasons, the court lacks jurisdiction to address plaintiff's DEA FOIA claim.

III.   Motion for Summary Judgment

The DOJ moves for summary judgment, arguing that the FBI and the DEA performed searches reasonably calculated to uncover all relevant documents and that those searches satisfy FOIA requirements. MSJ at 8-16. The DOJ also argues that the documents that were withheld were done so properly under FOIA exemptions 2, 6, 7C, and 7F. *Id.* at 17-22. Accordingly, the DOJ contends that this action should be dismissed as moot. *Id.* at 22-23.

In a FOIA case, "federal jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (internal quotation marks omitted). "Unless each of these criteria is met, a district court lacks jurisdiction to devise remedies to force an agency to comply with the FOIA's disclosure requirements." *Id.* "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records' or have not been 'improperly' 'withheld.'" *Id.* at 142 n.3. Summary judgment is appropriate when it is demonstrated that there

17

1   exists "no genuine issue as to any material fact and that the moving party is entitled to a

2   judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Lawyers Comm. for Civil Rights of*

3   *S.F. Bay Area v. U.S. Dep't of Treasury*, 534 F. Supp.2d 1126, 1131 (N.D. Cal. 2008) ("As a

4   general rule, all FOIA determinations should be resolved on summary judgment.").

5          An issue in many FOIA summary judgment motions is the agency's search.  The agency

6   must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant

7   documents."  *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995)

8   (citing *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).  The "issue to be resolved is not

9   whether there might exist any other documents possibly responsive to the request, but rather

10  whether the search for those documents was adequate."  *Id.*  The agency may demonstrate the

11  adequacy of its search by submitting affidavits describing the agency's search procedures that

12  "are relatively detailed in their description of the files searched and the search procedures, and []

13  are nonconclusory and not impugned by evidence of bad faith."  *Zemansky*, 767 F.2d at 573.

14  "Once an agency makes a showing that it conducted a search in good faith, 'with reasonable

15  detail, that the search method . . . was reasonably calculated to uncover all relevant documents,'

16  the agency's position can only be rebutted 'by showing that the agency's search was not made in

17  good faith.'"  *Kelly v. U.S. Census Bureau*, 2011 WL 3962489, at *2 (N.D. Cal. Sept. 7, 2011)

18  (quoting *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) and *Maynard v. C.I.A.*,

19  986 F.2d 547, 560 (1st Cir. 1993)).  "Agency affidavits enjoy a presumption of good faith that

20  withstands purely speculative claims about the existence and discoverability of other

21  documents."  *Chamberlain v. U.S. Dep't of Justice*, 957 F. Supp. 292, 294 (D.D.C. 1997); *Miller*

22  *v. U.S. Dep't of State*, 779 F.2d 1378, 1383 (8th Cir. 1985).  For example, a requester's

23  speculation that responsive records "could have been destroyed or removed" does not create a

24  genuine issue for trial.  *Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor is

25  the fact that somewhere there may be additional responsive documents relevant to the question

26  of whether the agency's search was adequate.  *NYC Apparel FZE v. U.S. Customs & Border*

1   *Prot.*, 484 F. Supp.2d 77, 88 (D.D.C. 2007).  The "issue to be resolved is not whether there

2   might exist any other documents possibly responsive to the request, but rather whether the

3   *search* for those documents was *adequate*."  *Citizens Comm'n on Human Rights*, 45 F.3d at

4   1328.

5          A.      Request for FBI Records

6          The DOJ moves for summary judgment on plaintiff's claim for FBI records because the

7   search conducted in response to plaintiff's request satisfies FOIA requirements.  MSJ at 13.

8   Specifically, the DOJ contends that in responding to plaintiff's request for "copies of all testing

9   results/written finding" from the DEA Southwest Laboratory concerning cocaine, the FBI found

10  and released 30 pages in 2009, released four additional pages in 2011, and referred three pages to

11  the DEA for further processing and release.  *Id.* at 13.  The DOJ contends that the declaration

12  submitted in support of the DOJ's motion shows both the scope, "all potentially responsive files

13  indexed to Richard Wayne Parker," and the search method, the FBI used its General Indices for

14  access to its Central Records System files.  *Id.*  According to DOJ, and the declarations it

15  submitted, that search was adequate and was "reasonably calculated to uncover all relevant

16  documents."  *Id.*  Although the General Indices are designed primarily as an investigative tool,

17  they allow alphabetical searches on names of all subjects, suspects and victims, so a search in

18  those Indices using plaintiff's name will locate any relevant files.  *Id.*  Additionally, the FBI

19  made an extra effort to find responsive records for plaintiff by using six variations of plaintiff's

20  name and by searching for and locating both the responsive "main" files *and* by searching for

21  cross-reference entries.  *Id.*  Further, the FBI also searched its file on plaintiff by hand for

22  laboratory reports, which resulted in several additional records being released to plaintiff.  *Id.*

23         Plaintiff responds that the agencies provided inaccurate, disingenuous denials to

24  plaintiff's FOIA requests, and that the most critical documents remain undisclosed without

25  explanation.  Opp'n at 2-3.  As an example of missing documents, plaintiff asks the court to

26  compare the gas chromatography testing results for various documents released and contends

1   that by doing so, it is apparent that not all testing results have been released.  *Id.* at 3.  Plaintiff

2   contends that the missing documents must exist in at least three separate locations: (1) DEA's

3   lab files, (2) the master case files of the FBI, and (3) the prosecution file of the Assistant U.S.

4   Attorney assigned to plaintiff's criminal case.  *Id.* at 6.  He argues that the the documents that are

5   missing are critical because without them, plaintiff cannot conduct a Chromatographic Impurity

6   Signature Profile Analysis ("CISPA") comparison of the evidence used in his trial.  *Id.* at 6.

7          However, the declarations submitted by the DOJ establish that the FBI conducted

8   adequate searches reasonably calculated to uncover the requested records.  To the extent there

9   are documents that plaintiff insists must be in existence in the FBI's records, there is sworn

10  testimony before this court that, after searching the pertinent records, no such documents exist.

11  There is sworn testimony that the DEA Laboratories sent DEA counsel in Washington, D.C.,

12  everything they had under the two FBI case numbers, and DEA counsel referred all 279 pages to

13  the FBI.  There is also sworn testimony that the FBI searched its subject investigative file and

14  even did a hand search of that file.  Plaintiff has presented no evidence to suggest that those

15  searches were not conducted in good faith.  *See Oglesby*, 920 F.2d at 68; *Maynard,* 986 F.2d at

16  560.  Although plaintiff speculates that there are missing documents because some of the gas

17  chromatography testing results produced more documents than others, plaintiff has not provided

18  anything more than speculation regarding the existence of such documents.  As the DOJ points

19  out, that speculation is based on an assumption that all samples were subjected to the same gas

20  chromatography testing; however, to the contrary, some of the instructions in job request letters

21  that the FBI sent to the DEA Laboratories were more elaborate than others, which would explain

22  why some of the lab results were more elaborate than others.  *See* Reply at 6; *see also Kubik v.*

23  *U.S. Fed. Bureau of Prisons*, 2011 WL 4372188, at *2 (D. Or. Sept. 19, 2011) ("Although the

24  Kubiks speculate that additional responsive records exist, they do not present anything in support

25  of this speculation beyond their conclusory statements.").

26  ////

1    Moreover, the focus of the court's inquiry is whether the search for responsive

2    documents was adequate, not whether any other possible responsive documents might exist.

3    *Zemansky*, 767 F.2d at 571.  Finally, as noted below, plaintiff does not dispute that the

4    information that the FBI withheld pursuant to FOIA Exemptions 2, 6, 7C, and 7F were properly

5    withheld.  Therefore, because there is no genuine issue of fact regarding whether the DOJ

6    "improperly" "withheld" any "agency records" in connection with plaintiff's requests for FBI

7    records, the DOJ is entitled to summary judgment on plaintiff's FOIA claim regarding his

8    request for those records.  *See Kelly*, 2011 WL 3962489, at *2-3.

9         B.    Request for DEA Records

10    The DOJ also argues that if this court determines that it has jurisdiction over plaintiff's

11    claim for DEA records, it is entitled to summary judgment on those claims because the searches

12    in response to plaintiff's requests for those records were adequate and satisfy FOIA

13    requirements.  MSJ at 14-17.  However, because the court finds that this claim was not fully

14    exhausted, the adequacy of DEA's search need not be addressed.

15         C.    FOIA Exemptions/Plaintiff's Motion to Strike

16    The DOJ also contends that it properly withheld certain documents under various FOIA

17    exemptions.  MSJ at 17-22.  Specifically, the DOJ argues that it properly withheld internal

18    personnel information under FOIA Exemption 2; it properly withheld individual identity

19    information under FOIA Exemptions 6 and 7C; and it properly withheld information whose

20    release could endanger law enforcement personnel under FOIA Exemption 7F.  *Id.*  However,

21    plaintiff does not dispute that these withholdings were proper.  Opp'n at 4-5.  Indeed, plaintiff

22    moves to strike the portions of the DOJ's motion and supporting papers which address the

23    applicability of the FOIA Exemptions at issue.  Dckt. No. 37 at 20.  In light of plaintiff's

24    concession that he is not challenging those withholdings, those issues need not be addressed, and

25    plaintiff's motion to strike should be denied as unnecessary.

26    ////

IV.   Plaintiff's Request for Discovery

In his opposition to the DOJ's motion, plaintiff requests that he be entitled to conduct "discovery to include interrogatories and admissions from the DEA Southwest Laboratory Director, FBI Special Agent FRANK JESTER and Assistant United States Attorney LISABETH RHODES (recipient of the testing documents from JESTER and DOJ employee) to verify that their agency files have been exhaustively searched for the documents if the DEA cannot locate the originals." Opp'n at 5, 10.  The DOJ opposes the request.  *See* Reply, Dckt. No. 36, at 7-11.

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "The party opposing summary judgment bears the burden of showing 'what facts she hopes to discover to raise a material issue of fact.'" *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991) (citation omitted).  Here, plaintiff has not submitted an affidavit or declaration in support of his request for discovery, nor has he shown specified reasons why he cannot present facts essential to justify his opposition to the DOJ's motion.  This is especially true since the threshold question in considering leave to conduct discovery in a FOIA case is whether the "agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp.2d 29, 35 (D.D.C. 2002) (denying discovery and granting summary judgment for agency).  Although plaintiff contends that he seeks to conduct discovery from the DEA Southwest Laboratory Director and FBI Special Agent Frank Jester in order "to verify that their agency files have been exhaustively searched for the documents if the DEA cannot locate the originals," Opp'n at 5, for the reasons discussed above, this court does not have jurisdiction over plaintiff's claim regarding his DEA requests.

1    Additionally, with regard to plaintiff's FBI requests, the declarations submitted in

2    support of the DOJ's motion are adequately detailed and there are no material factual disputes

3    regarding the adequacy of the FBI's searches or regarding whether those searches were

4    conducted in good faith.  Plaintiff has not made any showing regarding how Jester would add

5    any information at all, let alone that any information from Jester that would defeat summary

6    judgment.  Finally, although plaintiff seeks discovery from Assistant U.S. Attorney Lisabeth

7    Rhodes, plaintiff has not indicated that he sent a FOIA request to the Executive Office for United

8    States Attorneys for records from the prosecution case file.  Therefore, his request for

9    information reflecting that Rhodes's file was not searched is immaterial to the present summary

10   judgment motion.  Therefore, plaintiff's request for discovery under Federal Rule of Civil

11   Procedure 56(d) must be denied.

12   V.    Conclusion

13         Accordingly, IT IS HEREBY RECOMMENDED that:

14         1.  The DOJ's motion to dismiss defendants OIP, FBI, and DEA be granted;

15         2.  Plaintiff's claim for DEA records be dismissed for lack of jurisdiction;

16         3.  The DOJ's motion for summary judgment on plaintiff's FBI claim be granted;

17         4.  Plaintiff's motion to strike portions of the DOJ's motion and supporting papers be

18   denied;

19         5.  Plaintiff's motion for discovery be denied; and

20         6.  The Clerk be directed to enter judgment for the DOJ and close this case.

21         These findings and recommendations are submitted to the United States District Judge

22   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

23   after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

26   ////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 13, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE